## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED INC., | ) ) ) |
| Plaintiffs, | ) Civ. No. 07-333-SLR; ) Civ. No. 07-348-SLR; ) Civ. No. 07-409-SLR; |
| v. | ) and ) Civ. No. 07-765-SLR |
| JOHNSON & JOHNSON INC. and CORDIS CORPORATION, | ) ) ) |
| Defendants. | ) ) |

Josy W. Ingersoll, Esquire and Karen E. Keller, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Richard L. Delucia, Esquire, Paul M. Richter, Esquire, Michael K. Levy, Esquire and Jerry Canada, Esquire of Kenyon & Kenyon LLP, New York, New York.

Steven J. Balick, Esquire, John G. Day, Esquire and Lauren E. Maguire, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Defendants. Of Counsel: David T. Pritikin, Esquire, William H. Baumgartner, Jr., Esquire, Paul E. Veith, Esquire and Russell E. Cass, Esquire of Sidley Austin LLP, Chicago, Illinois.

## MEMORANDUM OPINION

Dated: January 24, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Currently pending before the court are several motions in several related declaratory judgment patent actions. Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") have filed four complaints against defendants Johnson & Johnson, Inc. and Cordis Corporation (collectively, "J&J"), seeking a judgment that each of four J&J patents are invalid: U.S. Patent Nos. 7,217,286 ("the '7286 patent") (Civ. No. 07-333, D.I. 1); 7,223,286 ("the '3286 patent") (Civ. No. 07-348, D.I. 1); 7,229,473 ("the '473 patent") (Civ. No. 07-409, D.I. 1); and 7,300,662 ("the '662 patent") (Civ. No. 07-765, D.I. 1). J&J has filed, in each action, a motion to dismiss for lack of subject matter jurisdiction and a motion to transfer to the District of New Jersey. (Civ. No. 07-333, D.I. 10, 21; Civ. No. 07-348, D.I. 8, 19; Civ. No. 07-409, D.I. 7, 22; Civ. No. 07-765, D.I. 8, 9) For the reasons that follow, the court denies each of these motions.

## II. BACKGROUND

### A. The Patents and Technology at Issue

The four patents at issue relate generally to drug-eluting coronary stents. The '7286, '3286, and '473 patents are all members of the same patent family, and issued from continuation applications each claiming priority to the same patent. Each of these patents share a common specification. The '662 patent shares two common inventors with the '7286, '3286, and '473 patents but is not a member of the same patent family.

Additional competitors in the coronary stent market, Abbott Laboratories and Abbott Cardiovascular Systems, Inc. (collectively, "Abbott"), manufacture a drug-eluting

stent under the "Xience V" brand. BSC manufactures a drug-eluting stent under the "Promus" tradename, which is a private-labeled version of Abbott's Xience V stent. Abbott makes these stents in the United States. BSC takes possession of the stents in California, ships them to its facility in Massachusetts, then readies them for transfer and sale in Europe. (Civ. No. 07-333, D.I. 14 at 4) BSC does not sell the Promus stent in the United States as it has not yet received FDA approval.[1] (Id., D.I. 1 at ¶¶ 17-18)

## B. Concurrent Litigation

Abbott previously filed declaratory judgment actions against J&J in which Abbott contested the validity of the '7286 patent (Civ. No. 07-259) and other J&J-owned patents not named in the present BSC actions (Civ. No. 06-613). Abbott filed four motions to supplement its complaints in Civ. Nos. 06-613 and 07-259 to add patents at issue in the present BSC actions; the court denied those motions, and subsequently dismissed both actions. Specifically, Civ. No. 06-613 was dismissed for lack of subject matter jurisdiction, while Civ. No. 07-259 was dismissed because J&J was first to file its lawsuit concerning the '7286 patent in the District of New Jersey. (Civ. No. 07-259, D.I. 25) There are now four lawsuits pending in the District of New Jersey in which J&J asserts infringement of each of the '7286, '3286,'473 and '662 patents by Abbott.[2]

A patent infringement suit is also pending in the Northern District of California entitled <u>Medtronic Vascular et al. v. Advanced Cardiovascular Systems, Inc. et. al.</u>

---

[1]The court understands as well that Abbott has not received FDA approval for the Xience V stent.

[2]District of New Jersey Civ. Nos. 07-2255, 07-2477, 07-2728, 07-5636 (collectively, the "New Jersey actions" or the "Abbott" actions).

3

("Medtronic"),[3] in which plaintiffs assert that Abbott's stents infringe several stent patents not at issue in this litigation.[4]  The Medtronic court granted a motion by BSC to intervene as a counter-claimant, finding that the facts as alleged show that a sufficient controversy exists to warrant the issuance of a declaratory judgment.[5]  (Medtronic, Civ. No. 06-1066, D.I. 159 at 2, found in the present docket at Civ. No. 07-333, D.I. 15, ex. A)

## III. STANDARD OF REVIEW

A party may bring either a factual or facial challenge to the court's jurisdiction in a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  See Turicentro, S.A. v. American Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002).  A facial attack, such as presented in the case at bar, contests the sufficiency of the pleadings; a defendant contends that, even if all such allegations were true, they would be insufficient to establish the court's jurisdiction.  When

---

[3]Northern District of California Civ. No. 06-1066.

[4]U.S. Patent Nos. 6,605,057, 6,190,358, and 6,858,037.

[5]The Medtronic court stated:

[I]t appears that a party seeking to invervene as of right under Rule 24(a) need not possess constitutional Article III standing in this circuit . . . In any event, even if standing were required, the court finds that the "facts alleged, under all the circumstances, show that there is a substantial controversy, between parties of adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Medimmune, Inc. v. Genentech, Inc., 127 S.Ct. 764, 774 (2007).  BSC has been actively promoting the medical device at issue (the Promus stent) in the United States, FDA approval is expected in early or mid-2008, Abbott is already manufacturing that stent for BSC in the United States, BSC is already selling that stent in Europe, and plaintiffs have accused that stent in this patent infringement action.

4

addressing a facial attack, the court must consider all the allegations of the complaint

as true, and test the existance of jurisdiction at the time the complaint was filed and

henceforth.[6] Id. (citation omitted); Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d

1340, 1344 (Fed. Cir. 2007) (citations omitted).

> The Declaratory Judgment Act provides that,
>
> in the case of actual controversy within its jurisdiction . . . any court of the United
> States, upon the filing of an appropriate pleading, may declare the rights and
> other legal relations of any interested party seeking such declaration, whether or
> not further relief is or could be sought.

28 U.S.C. § 2201(a). This "actual controversy" requirement refers to the types of

"cases" and "controversies" justiciable under Article III. See MedImmune, Inc. v.

Centocor, Inc., 127 S.Ct. 764, 771 (2007) (citation omitted). Article III standing requires

"a plaintiff to allege personal injury fairly tracable to the defendant's allegedly unlawful

conduct and likely to be redressed by the requested relief." Teva Pharm. USA, Inc. v.

Novartis Pharm. Corp., 482 F.3d 1330, 1337 (Fed. Cir. 2007) (citing Allen v. Wright,

468 U.S. 737, 751 (1984)). Of these standing requirements, injury-in-fact is the most

determinative. Id. (citing Schlesinger v. Reservists Comm. to Stop the War, 418 U.S.

208, 218 (1974)). "[T]he Supreme Court maintains the necessity of avoiding issuing

advisory opinions based on hypothetical facts." Id. (citing Elec. Bond & Share Co. v.

Sec. & Exch. Comm'n, 303 U.S. 419 (1938)); see also MedImmune, 127 S.Ct. at 771

(the dispute must be "definite and concrete, touching the legal relations of parties

having adverse legal interests," "real and substantial," and "admi[t] of specific relief

---

[6]In contrast, no presumption of truth is afforded plaintiff's allegations in the case
of a factual attack. See Turicentro, 303 F.3d at 300 n.14.

through a decree of a conclusive character, as distinguished from an opinion advising

what the law would be upon a hypothetical state of facts") (citations omitted). Thus, the

declaratory judgment plaintiff has the burden "under all the circumstances, [to] show

that there is a substantial controversy, between the parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment."[7]  MedImmune, 127 S.Ct. at 771.

## IV. DISCUSSION

### A. Motions to Dismiss

In the present case, BSC asserts that it "intends to begin selling its Promus stent

in the United States in 2008; FDA approval is pending."  (Civ. No. 07-333, D.I. 1 at ¶ 18)

Although BSC claims that FDA approval is imminent, BSC does not provide any details

regarding the status of its application.[8]  On this record, J&J asserts that BSC has failed

---

[7]The Federal Circuit has recognized, in view of MedImmune, that its previous "reasonable apprehension of suit test" is no longer the appropriate standard. See Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1284 (Fed. Cir. 2007) (citing MedImmune, 127 S.Ct. at 771 & n.11).

In addition to the reasonable apprehension of suit test, the Federal Circuit previously articulated a two-part test for determining whether the controversy requirement is met where a patentee brings a declaratory judgment action against an alleged future infringer:  "(1) the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a) (1982), or be making meaningful preparation for such activity; and (2) acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming." Lang v. Pacific Marine and Supply Co., Ltd., 895 F.2d 761, 764 (Fed. Cir. 1990).  It is unclear whether the Lang test, minus the requirement that a "reasonable apprehension of suit" results, remains applicable.  Another court considering the issue has interpreted MedImmune as overruling the Lang test.  See Geisha, LLC v. Tuccillo, No. Civ. A. 05-5529, 2007 WL 2608558, *8 (N.D. Ill. Sept. 4, 2007).

[8]The complaints in the 07-348, 07-409, and 07-765 actions do not provide additional detail.  BSC's responsive brief adds only that it expects to begin marketing

6

to demonstrate a present or even imminent dispute and either actual or imminent harm

to BSC, since: (1) the FDA has not approved the Promus stents; (2) BSC is unable to

identify with any certainty if or when FDA approval will be forthcoming; and (3) it is

undisputed that BSC has not marketed or sold the Promus stent in the United States.

(Id., D.I. 16 at 1-2)

As the Promus stent is merely a private-labeled version of Abbott's Xience V

stent, the New Jersey litigations filed by J&J, accusing Abbott of infringing the '7296,

'3286, and '473 patents at issue in this case, also concern the same stent at issue in

this case. In the New Jersey cases, J&J asserts jurisdiction based upon, inter alia,

Abbott's announcement that it sought FDA approval for its stent in 2007 and plans to

launch the Xience V stent in the United States in the first half of 2008.[9] (e.g., New

Jersey Civ. A. No. 07-2477, ¶ 9) J&J can not have it both ways. If it was appropriate to

file against Abbott, jurisdiction is equally appropriate over BSC in the present case; i.e.,

there is no reason to believe that BSC will not get FDA approval if Abbott does.[10] The

---

and selling the Promus stent in the first or second quarter of 2008; BSC avers that this
is "imminently" by any definition. (Civ. No. 07-333, D.I. 14 at 12) BSC has submitted a
press release which indicates that an FDA advisory committee has recommended
approval of Abbott's Xience V stent, dated November 29, 2007. (Civ. No. 07-765, D.I.
10, ex. A) Presumably, approval of the Promus stent would follow that of the Xience V,
though no additional information regarding the status of either application is provided.

[9]The New Jersey actions have, until very recently, been stayed; no motions to
dismiss have been filed.

[10]There is also no indication that potential FDA approval is "years away." See
Telectronics Paging Systems, Inc. v. Ventritex, Inc., 982 F.2d 1520, 1527 (Fed. Cir.
1992); compare Lang v. Pacific Marine and Supply Co., Ltd., 895 F.2d 761, 764-65
(Fed. Cir. 1990) (finding that plaintiff failed to meet the actual controversy requirement
required to maintain its declaratory judgment claim for patent infringement where "the
accused infringing ship's hull would not be finished until at least 9 months after the

court finds, therefore, that it may properly exercise jurisction over this matter; defendant's motions to dismiss are denied.

## B. Motions to Transfer

### 1. Standards

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice.  Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing Shulte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply so long as plaintiff has selected the forum for some legitimate reason.  C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., No. Civ. A. 01-199, 2001 WL 1617186 (D. Del. Nov. 28, 2001);

---

complaint was filed").

Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).  Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).

The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include:  "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."  Id. (citations omitted).

The public interests include:  "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases."

Id. (citations omitted).

### 2. Analysis

J&J argues that practical considerations "overwhelmingly favor" transferring the present litigations to the District of New Jersey, since the Abbott actions "involve exactly the same patents and exactly the same accused products as the [BSC] cases," and "[c]laim construction issues, infringement issues, and validity issues will thus be identical" in these cases. (Civ. No. 07-333, D.I. 21 at 4) J&J also points out that the New Jersey actions were first-filed vis-a-vis the BSC actions and no unique wrong has occurred in the District of Delaware. (Id. at 4-5) Finally, J&J argues that, while BSC is a Delaware corporation, its principal place of business is in Massachusetts, and Delaware is not its "home turf." (Id. at 6) J&J is both incorporated in and domiciled in New Jersey, where its relevant documents are presumably located. (Id.) Much of the research and development leading to the patents in suit was done in New Jersey, and the inventors of the patents in suit are domiciled there. (Id.)

In response, BSC argues that, while pursuing its claims against Abbott in New Jersey, J&J neither filed suit against BSC in New Jersey nor moved to join BSC as a party to the Abbott suits. (Id., D.I. 24 at 2-4, 8) BSC asserts that J&J's claims of "inconvenience" ring hollow in view of J&J's history of litigation (as both plaintiff and defendant) in Delaware. (Id. at 7) BSC claims that the private interests do not favor transfer, since: (1) BSC is incorporated in Delaware and both parties have litigated in this court previously; (2) the Promus stent, when approved, will be sold across the United States; (3) both companies are large corporations; (4) witnesses from both sides likely reside in many states; (5) the distance between the New Jersey and Delaware

10

district courts is roughly 60 miles; (6) key inventor witnesses would be within the subpoena power of this court for trial; and (7) the location of books and records is of little importance in view of electronic document production. (Id. at 8-10)  With respect to the public factors, BSC is not a party to the New Jersey litigation, although the same product and same patents are involved in both suits. (Id. at 11)  Trial is currently scheduled in the cases at bar for August 2009 (id., D.I. 19); since no trial date has yet been set in the New Jersey actions, BSC may wait longer in the event of a transfer to learn whether it can move forward with its Promus stents (Id., D.I. 24 at 13).

The court finds that the private interests implicated do not compel transfer to New Jersey.  As an initial matter, a corporation's decision to incorporate in a particular state is a rational and legitimate reason to litigate in that state.  See Stratos Lightwave, Inc. v. E20 Comm's, Inc., No. Civ. A. 01-309, 2002 WL 500920, *2 (D. Del. Mar. 26, 2002).  J&J has identified no witness who is reluctant to testify and who is beyond the subpoena power of the court.  J&J does not suggest that its documents can not be produced in Delaware, especially in this age where document production is typically done electronically.  Both parties are large corporations who have litigated in Delaware previously; the financial burden on J&J to litigate in Delaware, as compared to neighboring New Jersey, is not unduly harsh.  In sum, the private interests do not compel disrupting plaintiff's legitimate forum choice.

The court also finds that J&J has not met its burden to demonstrate that the public interests implicated weigh "strongly" in favor of transfer in this case.  Although this case involves the same patents and products as those under consideration in New Jersey, BSC is not a party to that litigation.  Cf. Cashedge, Inc. v. Yodlee, Inc., No. Civ.

11

A. 06-170, 2006 WL 2038504, *2 (D. Del. July 19, 2006) ("Importantly, the same parties

are currently litigating in the Northern District of California.") (granting transfer) (cited by

J&J at Civ. No. 07-333, D.I. 21 at 5). The record does not indicate that the New Jersey

cases may be tried prior to August 2009.[11] See Invitrogen Corp. v. Incyte Genomics,

Inc., No. Civ. A. 01-692, 2002 WL 883963, *3 (D. Del. May 1, 2002) (denying motion to

transfer where record did not reflect that cases filed elsewhere, involving the same

patents, were close to trial or resolution). BSC seeks the timely resolution of its claims

and, on this record, there is no indication that transfer will facilitate that end.[12] BSC's

claims that maintaining the present actions will "open the door to inconsistent rulings"

regarding claim construction and validity regarding the asserted patents is, at this time,

entirely speculative. (Civ. No. 07-333, D.I. 21 at 5) Accordingly, the motions to transfer

will be denied, without prejudice to renew should circumstances change.

## V. CONCLUSION

For the aforementioned reasons, each of defendant's motions to dismiss and to

transfer are denied. An appropriate order shall issue.

---

[11]The court notes that the scheduling order entered in the New Jersey actions dated January 23, 2008 does not contemplate a trial date. Claim construction briefing in those cases is not set to conclude until February 2009. (New Jersey Civ. No. 07-2477, D.I. 20)

[12]Under the first-filed rule, "[i]n all cases of federal competent jurisdiction, the court which first has possession of the subject must decide it." E.E.O.C. v. Univ. of PA, 850 F.2d 969, 970 (3d Cir. 1988) (quotation omitted). The rule "gives a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." Id. at 971 (internal quotations and citation omitted). To the extent that courts have found that the first to file rule does not require the parties to each suit be identical, see Time Warner Cable, Inc. v. GPNE Corp., 497 F. Supp. 2d 584, 589-90 (D. Del. 2007), the court exercises its discretion to retain jurisdiction over the actions at bar given the risk of prejudice to BSC.