IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON, INC. and CORDIS CORPORATION, <br><br> Defendants. | Civil Action No. 07-333-SLR <br> Civil Action No. 07-348-SLR <br> Civil Action No. 07-409-SLR |
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON, INC., CORDIS CORPORATION, and WYETH, <br><br> Defendants. | Civil Action No. 07-765-SLR |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
FOR LEAVE TO FILE AMENDED COMPLAINTS**

Plaintiffs Boston Scientific Corporation and Boston Scientific SciMed, Inc. (collectively, "BSC") hereby submit the following reply in support of their motion for leave to file first amended complaints in Civil Action Nos. 07-333, 07-348, and 07-409 and a second amended complaint in Civil Action No. 07-765. As noted in BSC's originally filed motion, good cause exists under Rule 16(b) to modify the Court's scheduling order to allow BSC to file its proposed amendments.

There is absolutely no prejudice to Cordis in allowing BSC to amend its complaints at this time, and there is plenty of time for Cordis to address the allegations in them. Most of the inequitable conduct allegations in BSC's proposed amended complaints in these cases are identical to those alleged by Abbott (and already entered as a pleading) in Abbott's co-pending, parallel cases on the same four patents against Cordis in the District of New Jersey.[1] Moreover, in these cases in the District of Delaware, most of the key discovery has yet to take place, including depositions of the critical, named inventors (Drs. Falotico and Kopia) on the patents-in-suit and the primary attorney (Mr. Colletti) responsible for the prosecution of those patents in the USPTO. Moreover, as set during a recent teleconference with the Court, trial in this matter will not take place for over a year from now, with a start date of February 8, 2010.

It is the height of irony for Cordis to oppose BSC's motion by arguing that BSC supposedly delayed or was not diligent in bringing its amended complaints. The opposite is true. Cordis has consistently and continuously done everything in its power to delay these cases and block every attempt by BSC to take discovery from the witnesses most likely to confirm the inequitable conduct allegations in BSC's amended complaints, particularly the depositions of critical named inventors Drs. Falotico and Kopia. Further, from the time in October when BSC

---

[1] The *Cordis v. Abbott* cases pending in the District of New Jersey involve the same four patents-in-suit as here and are directed to the same stent product, as the BSC PROMUS stent at issue here is a private-labeled version of the XIENCE V Abbott stent at issue in New Jersey. Abbott brought an amended complaint alleging patent unenforceability in the New Jersey cases on October 8, 2008 after filing a motion for leave to amend with regard to that amended complaint on September 26, 2008. See Dist. N.J. Civ. Act. No. 07-2265, D.I. 47, 50. After receiving Abbott's proposed amended complaint and motion for leave to amend, Cordis agreed not to oppose the amendment on October 2, 2008. See *id.* at D.I. 48 (attached as Ex. DD). BSC's proposed amended complaint is comprised primarily of the Abbott allegations, with some additional inequitable conduct allegations brought independently by BSC. However, the vast majority of the inequitable conduct allegations in BSC's proposed amended complaints are identical to Abbott's and, therefore, Cordis cannot make any prejudice allegations as to those, as Cordis has been aware of them since September of 2008 and, indeed, did not oppose their entry into the parallel Abbott NJ cases on the identical patents and accused product.

raised the prospect of amending its complaints to allege patent unenforceability, up until a teleconference on December 15, 2008 to discuss BSC's draft amended complaints, Cordis never once objected to the timeliness of the proposed amendments or argued that it would be prejudiced by their entry. When BSC conveyed a draft of the proposed amended complaints to Cordis on November 26, 2008, it did so with the understanding from Cordis that Cordis would review the drafts and might not oppose a motion for leave to amend, particularly given the lack of opposition to Abbott's motion to amend in the parallel cases.

BSC's motion and proposed amended complaints are appropriate, well-founded and timely under the circumstances. Cordis's own conduct and delays, not a lack of diligence on BSC's part, are responsible for the timing of BSC's motion for leave to amend. Moreover, BSC's motion and proposed amendments meet the requirements of Rule 15(a). BSC's motion for leave to amend was filed as soon as practicable in light of the progress of discovery in this case. Further, given the amount of time remaining for discovery, the trial date set by the Court, and the fact that inequitable conduct claims identical to the vast majority of those proposed by BSC are presently being asserted by Abbott in the parallel New Jersey case, Cordis cannot possibly be unduly prejudiced by the proposed amendments.

## ARGUMENT

### I. Cordis's Manufactured Arguments Cannot Defeat the Good Cause that Exists for the Court to Grant BSC's Motion for Leave to Amend

Cordis argues that BSC's motion for leave to amend should be denied pursuant to Rule 16(b). *See* D.I. 129 at 1.[2] According to Cordis, good cause for modifying the Court's July 25,

---

[2]   Unless otherwise indicated, the abbreviation "D.I." refers to the docket entries in D. Del. Civil Action No. 07-333.

2008 date for filing such motions is lacking in light of BSC's supposed lack of diligence and five month "delay" before moving for leave to amend. *See id.* at 1-2, 5-7. These arguments deliberately ignore the stark realities of this case. Indeed, it was Cordis's delays, including its late document productions and repeated, unilateral cancellation of critical depositions, coupled with its late objection to BSC's proposed complaint amendments, that prevented BSC from seeking leave to amend earlier than it did.

As noted by BSC in its originally filed motion, while the deadline for producing documents passed on July 25, 2008 (the same day motions for leave to amend were due to be filed), Cordis produced hundreds of thousands of pages of documents after this date.[3] Cordis continues to ignore the July 25, 2008 deadline for document production, and continues to produce documents on a regular basis, making its most recent productions on December 30th, January 13th, January 14th, and January 15th. *See* attached Exs. U, V, W, X.[4] BSC has no idea when these Cordis document productions will stop. These late document productions have

---

[3] Cordis contests BSC's accounting of the number of documents Cordis produced after the July 25, 2008 date for pleading amendments. *See* D.I.129 at 6. BSC stands by its assessment that Cordis produced around 600,000 pages of documents after the July 25 cut-off date. Even if BSC is wrong, however, Cordis at least admits that it has produced more than 300,000 pages since July 25th. *See id.* While not as large as the number calculated by BSC, this is still an enormous volume of late-produced documents and, standing alone, still justifies the timing of BSC's motion for leave to amend. Further, Cordis also ignores that BSC received, for example, a production of almost 100,000 pages of documents on the last day of document production. *See* 7/24/08 letter from Spanbauer to Canada (attached to D.I. 130 as Ex. H). Cordis also ignores that it produced more than 20,000 pages of "CORD" labeled documents from October 2008 through January of 2009 (well more than the approximately 16,000 pages referenced by D.I. 130) and smaller additional productions of "CRDS" labeled documents as late as January 15, 2009. *See* attached Exs. U, V, W, and X.

[4] Exhibits U through EE are attached to the accompanying *Second Declaration of K. Patrick Herman, Esq. in Support of Plaintiffs' Motion for Leave to File Amended Complaints* ("Second Herman Dec."). Exhibits A through T are attached to the *Declaration of K. Patrick Herman, Esq. in Support of Plaintiffs' Motion for Leave to File Amended Complaints* ("Herman Dec.") which was previously filed as D.I. 125.

interfered and continue to interfere with BSC's ability to fully develop and flesh out all aspects of its defenses.

In addition to prejudicing BSC by making it difficult to fully formulate and pursue its defenses, Cordis's late document productions have disrupted the flow of the case and eviscerated any purpose in scheduling both the document production and pleading amendment deadline for the same date of July 25, 2008. Moreover, Cordis made and continues to make its late document productions without seeking to amend the Court's scheduling order. While Cordis purports to take BSC to task for not previously seeking an extension of the date for filing its amended pleadings, Cordis itself blatantly ignored (and continues to blatantly ignore) the scheduling order relative to document production. It appears that Cordis has granted itself a unilateral, continuing extension to produce documents on whatever schedule it sees fit. Cordis's efforts to stringently enforce one deadline set by the Court's scheduling order against BSC, while flaunting other deadlines to its own benefit, smacks of improper gamesmanship and should not be rewarded. The discovery process is not a one-way street, as Cordis seems to believe based on its conduct in this case.

Moreover, contrary to the suggestions in Cordis's opposition paper, up until December 15, 2008, BSC had no idea whether Cordis would even oppose the instant motion for leave to amend its complaints. Following the unopposed amendment by Abbott of its complaint in the parallel New Jersey action in October of 2008, BSC informed Cordis on October 7, 2008 of its consideration of amending its complaints in this action to make allegations much like those of Abbott, and asked whether Cordis would oppose such an amendment. Cordis did not respond, prompting a reminder e-mail from BSC on October 15th. *See* 10/15/08 email from Richter to Cass (attached to D.I. 130 as Ex. A). Again, Cordis never indicated that it would oppose such an

amendment from BSC, instead asking in its October 15th reply e-mail only whether BSC would provide it with a draft amended complaint and whether the BSC amendment was identical to that of Abbott's, which had not been opposed by Cordis and was entered in New Jersey in October, 2008. *See* 10/15/08 email from Cass to Richter (attached to D.I. 130 as Ex. B).

Following up, on October 23, 2008, BSC indicated to Cordis that, in addition to the allegations already made by Abbott in its unopposed amended complaints in New Jersey, BSC's amended complaints also would contain some additional allegations. *See* 10/23/08 email from Richter to Cass (attached to D.I. 130 as Ex. C). Then, on November 26, BSC forwarded copies of its proposed amended complaints to Cordis, with BSC still having the understanding that Cordis may not oppose BSC's effort to amend its complaints. *See* 11/26/08 email from Richter to Cass (attached to D.I. 130 as Ex. D). BSC's understanding in that regard was bolstered by Cordis's utter silence for 20 days following its receipt of the draft amended complaints from BSC. Cordis never objected during that time, and certainly never said that BSC's amended complaints were late or prejudicial to Cordis in any respect.

Indeed, BSC had to prompt Cordis to even get a reaction to the draft amended complaints, which BSC did on December 14th by asking for a teleconference with Cordis on that subject on the next day, December 15, 2008. *See* attached Ex. EE. It was only then, 20 days after receiving the draft amended complaints it now calls delayed, that Cordis finally told BSC that it would oppose BSC's motion for leave to amend. *See* attached Ex. Y. Up until that time, given the facts of discovery in this case and given Cordis's posture relative Abbott's amendment in the parallel New Jersey cases, BSC had no reason (nor was there one) to expect that Cordis would argue against the instant motion by alleging that BSC had delayed. Cordis's utter failure to raise any

DB01:2671988.1　　　054604.1003

argument regarding delay until it filed its opposition paper to this motion calls into question the legitimacy of that opposition and Cordis's claims of prejudice.

Equally telling and fatal to Cordis's opposition are its own, numerous delays and obstructions of deposition discovery during the October and November time-frame when the parties were discussing BSC's amending of the complaints to allege inequitable conduct. As an initial matter, no depositions occurred before the July 25, 2008 date for amending pleadings. *See* Herman Dec. at ¶ 12. Further, between October 7, 2008 (the date on which BSC first informed Cordis of its proposal to amend its complaint in line with Abbott's unopposed allegations in the parallel New Jersey action) and November 26, 2008 (the date on which BSC first provided Cordis with copies of its proposed amendments containing the allegations identical to Abbott's, as well as some additional inequitable conduct allegations), BSC scheduled and attempted to take the depositions of two key inventors named by the patents-in-suit, Drs. Robert Falotico and Gregory Kopia. BSC's efforts were repeatedly thwarted by Cordis, even though both of these individuals appear to have been heavily involved in the prosecution of the patents-in-suit and, as such, are likely in possession of information that would confirm BSC's inequitable conduct allegations.

As explained previously, Cordis rescheduled the deposition of Dr. Falotico twice in October 2008 and then finally canceled the deposition on November 7, 2008 even though BSC indicated that it was available on all the offered and accepted dates. *See* Exs. M, N, O to the Herman Dec. Similarly, Cordis unilaterally cancelled the previously scheduled deposition of Gregory Kopia, despite BSC's confirmation that it was available to take the deposition on the date offered. *See* Ex. P to the Herman Dec. BSC fully expected, and continues to expect, that

the depositions of these named inventors will bolster and further confirm its inequitable conduct allegations.

Incredibly, in its opposition, Cordis argues that the depositions cited by BSC, including those mentioned above, "were cancelled by Abbott." *See* D.I. 129 at 2. This desperate argument underscores Cordis's own recognition of the weakness of its position here. Notwithstanding Cordis's efforts to do so, discovery in these Delaware actions and the parallel Abbott cases against Cordis in New Jersey are not formally consolidated. There is no order that a deposition in this case in Delaware cannot proceed unless Abbott is available to attend at the same time in the parallel New Jersey action. That was Cordis's own edict, entered on its own and without regard to any order from the Courts in Delaware and New Jersey that are actually handling these cases. Cordis's arguments are little more than an inappropriate effort to shift the blame to Abbott for Cordis's own reluctance to allow key depositions to go forward in this case. In short, BSC was ready to depose these key inventors in October and November of 2008, but was thwarted by Cordis alone. BSC still has not been able to depose these named inventors and will not be able to do so until February 2009, at the earliest.

In sum, Cordis has been the dilatory party here, displaying a consistent pattern of delay and obstruction of BSC's discovery efforts. In contrast, the timing of BSC's motion for leave to amend reflects BSC's extra efforts to confirm, through adequate discovery, its inequitable conduct defenses. Thus, it is beyond dispute that good cause exists for the modification of the Court's scheduling order to allow for amendment. *See, e.g., Enzo Life Sci., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489-90 (D. Del. 2003).

## II. Cordis's Claims of Prejudice Are Illusory and Manufactured for Its Opposition

Besides wrongly arguing that BSC acted without diligence, Cordis also alleges that it will be unduly prejudiced if BSC's motion for leave to amend is granted. *See* D.I. 129 at 7-8, 9-10.

Among other things, Cordis claims that the case is in such a "late stage" that it will be difficult for Cordis to respond to BSC's proposed amendments. *See id.* at 8. These arguments ring hollow on even brief review of the facts at hand.

During the recent January 13, 2009 conference with the Court, trial was scheduled to start on February 8, 2010. Thus, trial is more than a year away and Cordis has more than enough time to respond to BSC's proposed amendments. Indeed, even under the Court's current scheduling order, Cordis still has at least about six weeks in which to conduct fact discovery (currently set to close on March 4, 2009), and that date can be moved by up to six more weeks, if necessary.

Cordis also concocts an argument that BSC's proposed amendments will require it to retake a number of "third-party" depositions, in particular the depositions of Mark Roller and Brian Firth (*see* D.I. 129 at 8). These arguments are entirely lacking of merit. Neither Dr. Roller or Dr. Firth are named as inventors by the patents-in-suit and neither of these individuals appears to have engaged in patent prosecution for Cordis. It is unclear why their deposition testimony would have any bearing on BSC's inequitable conduct allegations at all. In any event, even if they were relevant witnesses, it is difficult to see how Cordis would be prejudiced by their depositions already having taken place since: (1) both of these witnesses used to work for Cordis; (2) both of them still reside close by, in New Jersey, and could be called as witnesses at trial, if necessary; and (3) both witnesses appear to still be in full cooperation with Cordis and its outside counsel in all respects, as they each appeared for their depositions without being subpoenaed and were each represented at their depositions by Cordis's outside counsel in this matter. For Cordis to argue that either Dr. Roller or Dr. Firth is a "third-party" in this matter relative to Cordis is a stretch, to put it mildly.

In contrast, the depositions of the inventors and prosecuting attorneys whose testimony may actually be relevant to confirming and proving BSC's inequitable conduct allegations have not yet occurred. For instance, Cordis has indicated that Drs. Kopia and Falotico, two key inventors named by the patents-in-suit, are available for deposition in February. *See* attached Exs. Z, AA. Further, Dr. Llanos, another key inventor, appeared for a second day of deposition on Friday, January 23rd. *See* attached Ex. BB. Similarly, Cordis proposed dates in February for the depositions of two in-house attorney who appear to have been involved in the prosecution of the patents-in-suit. *See* Second Herman Dec. at ¶ 15. As a result, Cordis still has an opportunity to ask these relevant witnesses whatever questions it desires relating to BSC's inequitable conduct defenses.

Finally, in arguing that it supposedly will be unduly prejudiced, Cordis glosses over the critical fact that BSC's proposed amended complaints are largely identical to defenses Abbott asserted in New Jersey via amendment this past October 8, 2008. For example, in connection with District of Delaware Civil Action No. 07-333, BSC filed a proposed amended complaint with new paragraphs 27-81 relating to inequitable conduct. *See* D.I. 125, Ex. A. The amended answer filed by Abbott in connection with the parallel District of New Jersey Civil Action No. 07-2265, which involves the same patent-in-suit, U.S. Patent No. 7,217,286 ("the '7286 patent"), included new paragraphs 18-71 relating to inequitable conduct. *See* attached Ex. CC. A brief comparison of BSC's inequitable conduct allegations with those made by Abbott reveals that paragraphs 28-31 and 33-82 of BSC's proposed amendment are nearly identical to paragraphs 18-71 of Abbott's answer. *Compare* D.I. 125, Ex. A with attached Ex. CC. The only different paragraphs added by BSC are paragraphs 27 (which provides an introduction) and 32 (which articulates additional bases of inequitable conduct uncovered by BSC). *See id.* Similarly, the

proposed complaints filed by BSC in connection with Civil Action Nos. 07-348, 07-409, and 07-765 contain only one or two paragraphs that are different from those in the amended answers filed by Abbott in New Jersey. Cordis agreed to allow Abbott's amendments in New Jersey without objection and without claims of prejudice or undue delay. *See* attached Ex. DD.

Given the similarity between BSC's and Abbott's inequitable conduct claims, the amount of time remaining for discovery in this case, and the date trial scheduled for over a year from now, Cordis's prejudice arguments utterly fail.

### III. Cordis Fails to Challenge the Merit of BSC's Inequitable Conduct Allegations

Tellingly, while Cordis's opposition brief contains pages of argument relating to improperly targeted allegations of delay and other procedural hyper-technicalities, it does not once address the merits of BSC's proposed inequitable conduct allegations. As confirmed at recent depositions, and as BSC expects to be further emphasized at the upcoming depositions of inventors Drs. Falotico and Kopia, BSC's inequitable conduct defenses are meritorious and should not be excluded from the case in light of the circumstances described above.

### CONCLUSION

For the foregoing reasons, for the reasons articulated in its original motion, and because its proposed amendments meet the requirements of both Fed. R. Civ. P. 16(b) and 15(a), BSC respectfully requests that this Court grant it leave to file amended complaints.

        YOUNG CONAWAY STARGATT &
        TAYLOR, LLP

*/s/ Karen E. Keller*

Josy W. Ingersoll (No. 1088)
Karen L. Pascale (No. 2903)
Karen E. Keller (No. 4489)
Andrew A. Lundgren (No. 4429)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
jingersoll@ycst.com
kpascale@ycst.com
kkeller@ycst.com
alundgren@ycst.com
(302) 571-6600

*Attorneys for Plaintiffs*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*

*Of Counsel:*
Richard L. DeLucia
Paul M. Richter
Michael K. Levy
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Dated: January 26, 2009

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on January 26, 2009, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
>John G. Day, Esquire [jday@ashby-geddes.com]
>Lauren E. Maguire, Esquire [lmaguire@ashby-geddes.com]
>ASHBY & GEDDES
>500 Delaware Avenue, 8th Floor
>Wilmington, DE 19801

I further certify that on January 26, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

>*By E-Mail*
>
>David T. Pritikin, Esquire [dpritikin@sidley.com]
>William H. Baumgartner, Esquire [wbaumgartner@sidley.com]
>Russell E. Cass, Esquire [rcass@sidley.com]
>Andrew R. Hein, Esquire [ahein@sidley.com]
>Jon M. Spanbauer, Esquire [jspanbauer@sidley.com]
>SIDLEY AUSTIN LLP
>One South Dearborn
>Chicago, IL 60603

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ Karen E. Keller
>_____
>Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
>Karen L. Pascale (#2903) [kpascale@ycst.com]
>Karen E. Keller (#4489) [kkeller@ycst.com]
>Andrew A. Lundgren (#4429) [alundgren@ycst.com]
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, Delaware 19801
>(302) 571-6600
>*Attorneys for Plaintiffs, Boston Scientific Corporation and Boston Scientific Scimed, Inc.*