**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON and CORDIS CORPORATION, <br><br> Defendants. | Civil Action No. 07-333-SLR <br> Civil Action No. 07-348-SLR <br> Civil Action No. 07-409-SLR |
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON, CORDIS CORPORATION, and WYETH <br><br> Defendants. | Civil Action No. 07-765-SLR |

**DEFENDANT WYETH'S POST-HEARING BRIEF IN SUPPORT OF ITS MOTION TO
<u>DISQUALIFY HOWREY LLP FROM REPRESENTING PLAINTIFFS</u>**

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

David T. Pritikin
William H. Baumgartner, Jr.
Russell E. Cass
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, Illinois 60603
312-853-7000
dpritikin@sidley.com
wbaumgar@sidley.com
rcass@sidley.com

Dated: August 11, 2009

{00322905;v1}

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ANSWER TO THE COURT'S FIRST QUESTION.........................................................................1

ANSWER TO THE COURT'S SECOND QUESTION ..................................................................4

WHAT THE EVIDENCE AT THE HEARING SHOWED............................................................5

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Affymax, Inc. v. Johnson & Johnson*,
420 F. Supp. 2d 876 (N.D. Ill. 2006) .......... 6

*Baas v. Dollar Tree Stores, Inc.*,
2008 WL 906496 (N.D. Cal. April 1, 2008) .......... 10

*Concat LP v. Unilever, PLC*,
350 F. Supp. 2d 796 (N.D. Cal. 2004) .......... 5

*In re Cendant Corp. Securities Litigation*,
124 F. Supp. 2d 235 (D. N.J. 2000) .......... 5

*In re Sugar Indus. Antitrust Litigation*,
579 F.2d 13 (3d Cir. 1978) .......... 6

*Integrated Health Services of Cliff Manor, Inc. v. THCI Co.*,
2005 U.S. Dist. LEXIS 14218 (D. Del. July 18, 2005) .......... 4

*International Business Machines Corp. v. Levin*,
579 F.2d 271 (3d Cir. 1978) .......... 10

*Jones v. United States*,
828 A.2d 169 (D.C. 2003) .......... 1

*PharmAthen, Inc. v. SIGA Technologies, Inc.*,
No. 2627-VCP, 2009 WL 2031793 (Del. Ch. Ct. July 10, 2009) .......... 1

**RULES**

Local Rule 83.6(d) .......... 4

*Model Rules of Prof'l Conduct*, Rule 1.7 (2002) .......... 4, 5, 9

**INTRODUCTION**

In the present brief, Wyeth addresses first the two questions posed by the Court. Wyeth then summarizes the crucial testimony from the evidentiary hearing which, in Wyeth's view, is dispositive of the disqualification issue.

**ANSWER TO THE COURT'S FIRST QUESTION**

The Court asked the parties to address the question of "who bears the burden of keeping the corporate entities straight?" (Tr. 174) The answer is that "it depends."

An attorney-client relationship exists where (1) the client believes that the attorney is acting as his or her lawyer; and (2) the client's belief is reasonable, taking into account all of the circumstances. *See PharmAthen, Inc. v. SIGA Technologies, Inc.*, No. 2627-VCP, 2009 WL 2031793, *1 (Del. Ch. Ct. July 10, 2009) ("courts look at the contacts between the potential client and its potential lawyers to determine whether it would have been reasonable for the 'client' to believe that the attorney was acting on its behalf as counsel").[1]

Suppose that Parent Company A believes that Lawyer Jones represents it, and that belief is reasonable under the circumstances. Given those facts, under Delaware law, an attorney-client relationship exists between Jones and Parent Company A. If Lawyer Jones is mistaken about the corporate relationships between Parent Company A and its affiliates, and erroneously thinks that he represents only Subsidiary B, that makes no difference – given that Company A reasonably

---

[1] Delaware law governs because Wyeth is a Delaware corporation (Tr. 13), Boston Scientific chose to bring this proceeding in Delaware, and the injury to Wyeth for which it seeks redress (Howrey's breach of its duty of loyalty) occurred in Delaware. However, if the Court were to apply District of Columbia law (because Howrey has its principal place of business there), the result would be the same. *See Jones v. United States*, 828 A.2d 169, 176 (D.C. 2003) ("[T]he relationship between attorney and client hinges on the client's intention to seek legal advice and his belief that he is consulting an attorney…. [T]he intent of the person seeking advice is assessed from that person's viewpoint, not that of the attorney.").

believes that Jones represents it. In this situation, the risk of keeping corporate identities straight rests with the lawyer.

However, if the two-part test were not satisfied, no attorney-client relationship would exist. For example, if Parent Company A believed that Lawyer Jones represented it, but that belief was not reasonable under the circumstances, there would be no attorney-client relationship. The risk in that case of keeping corporate identities straight rests with the client.

There is no unfairness in this allocation of risk. The lawyer can, and should, confirm with the client in writing who he represents. Doing so shifts the risk of a misunderstanding to the client, because the client cannot ***reasonably*** believe that the lawyer represents an entity other than the client-entity set out in the written communication. If the lawyer fails, however, to determine who he represents and confirm the identity of the client in an engagement letter or similar writing, he runs the risk of being found to have represented whatever entity the client reasonably thinks he represented. In other words, if the lawyer does not take the time to prepare an engagement letter, the lawyer bears the risk of any misunderstanding about who his client is.

In this case, the evidence shows that Howrey did not typically document through an engagement letter which Wyeth entit(ies) it was representing in a particular matter. Thus, of the twenty-nine different matters that Howrey has handled for the Wyeth family of companies (*see* DX 31, describing separate matters numbered from 07941.***0001*** through 07941.***0029***), only two matters appear to have resulted in engagement letters specifying exactly who the client was. (BSX 1 & BSX 19) Having largely ignored the need to determine who it represented and document the identity of its client, Howrey bore the risk of any misunderstanding about who it was representing.

The question remains of which Wyeth entit(ies) Howrey now represents, given this allocation of the risk of uncertainty about who Howrey represented. Of course, who Howrey represents turns on the exact same two-part test for judging the existence of an attorney-client relationship that is discussed above.

As to the first part of the test (did Wyeth the parent believe that Howrey was acting as its lawyer in the Lonza opposition proceeding?), the testimony of David Manspeizer (Wyeth's Vice President of Intellectual Property and Associated General Counsel[2]) was perfectly clear:

> Q    So far as you are concerned, who was Howrey's client in connection with its work on this opposition proceeding?
>
> A    Its client was Wyeth, the parent company. (Tr. 21)

As to the second part of the test (was Wyeth's belief that Howrey represented the parent company in the opposition proceeding reasonable?), the simple fact is that Howrey filed papers in the European Patent Office identifying the opponent in the opposition as "Wyeth," with offices at "Five Giralda Farms, Madison, New Jersey." (Tr. 18-19; DX 5) Those are the corporate offices of Wyeth, the parent. (Tr. 19) It was certainly reasonable for David Manspeizer to conclude that Howrey represented Wyeth, given that Howrey filed papers in the European Patent Office on Wyeth's behalf. (Tr. 21-22)

Manspeizer's view was also reasonable given that Howrey was engaged to work on the Lonza opposition proceeding by U.S.-based employees of Wyeth, the parent. (DX 11; Tr. 22-25) The initial e-mail exchange with Howrey, relating to the opposition, alluded to "how the work would be divided between Howrey and Wyeth," thus implying that Wyeth, the parent, was Howrey's client. (DX 11; Tr. 22-25) Howrey's invoices for its work on the opposition

---

[2] Tr. 13.

proceeding were addressed to "Wyeth Pharmaceuticals," which Manspeizer explained is "an unincorporated division of Wyeth, the parent company." (DX 35; Tr. 31)

Manspeizer's conclusion that Howrey represented Wyeth in the Lonza opposition was also reasonable because Howrey had recently represented Wyeth, the parent, in at least three past matters:

- Howrey assisted Wyeth in connection with a 2007 lawsuit, the *Hesch* case, that Wyeth, the parent, had filed in the U.S. District Court for the Southern District of New York (DX 29; Tr. 50-52, 149-150)

- In December 2008, Howrey sent letters on behalf of Wyeth, the parent, reminding twenty European competitors of Wyeth's patent rights (DX 8; Tr. 38-41)

- In late 2008, Howrey also obtained two seizure orders for Wyeth, the parent, from the Brussels Commercial Court. (DX 6 & DX 7; Tr. 41-50, 152-53) Howrey "formally" represented Wyeth, the parent, in court. (Tr. 153)

## ANSWER TO THE COURT'S SECOND QUESTION

The Court also asked the parties to address whether Howrey's ethical wall was sufficient to solve any conflict problem. The answer is "no."

Local Rule 83.6(d) provides that attorney conduct in this Court is governed by the Model Rules of Professional Conduct of the American Bar Association. *See Integrated Health Services of Cliff Manor, Inc. v. THCI Co.*, 2005 U.S. Dist. LEXIS 14218 at *8 (D. Del. July 18, 2005) (applying ABA Model Rule 1.7 to resolve disqualification issue). ABA Model Rule 1.7(a) states:

> Except as provided in paragraph (b) [relating to consent], a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a

significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Model Rules of Prof'l Conduct*, Rule 1.7(a) (2002). This rule could have been written to permit a lawyer to have a concurrent conflict of interest if an ethical screen was in place. It was not. Ethical screens therefore do not solve the problem created by a concurrent conflict of interest.

Courts in other Districts have considered this issue. Consistent with Rule 1.7, they have concluded that, absent consent, a law firm cannot be adverse to a current client, with or without an ethical wall. *See In re Cendant Corp. Securities Litigation*, 124 F. Supp. 2d 235, 248 (D. N.J. 2000) ("Rules in jurisdictions which permit ethics screens in limited circumstances apply only to situations involving former clients [citing applicable rules in Pennsylvania, Massachusetts, and Oregon]. They do not treat situations involving simultaneous representation of two clients where a violation of any subsection of Rule 1.7 is present."); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 822 (N.D. Cal. 2004) ("Although an ethical wall may, in certain limited circumstances, prevent a breach of confidentiality, it cannot, in the absence of an informed waiver, cure a law firm's breach of its duty of loyalty to its client").

## WHAT THE EVIDENCE AT THE HEARING SHOWED

During his opening statement, Boston Scientific's counsel gave two reasons why Howrey could properly represent Boston Scientific in this litigation. First, he claimed that "Howrey does not represent Wyeth, the parent." (Tr. 8) Second, he argued that "if, for some reason, the Court concludes that there is some kind of conflict, we submit that it has been waived" through Howrey's "client representation memoranda." (Tr. 10)

Joachim Feldges' testimony was inconsistent with both of these arguments. Feldges is one of Howrey's "relationship partners" for Wyeth. (Tr. 12) He gave this testimony concerning

his work on the *Hesch* litigation, which Wyeth, the parent, filed in the U.S. District Court for the Southern District of New York (*see* DX 29 [*Hesch* complaint]):

> Q     Let me ask you about the *Hesch* case. Who was your client in that case, sir?
>
> A     To the best of my understanding at that time, it was a company called Wyeth Pharmaceuticals. That was also the reason Wyeth and my invoices and my communications that way.
>
> Q     Now, when you say Wyeth Pharmaceuticals, do you mean the unincorporated division of Wyeth, or something else?
>
> A     I have now learned through this process that there is an unincorporated division.
>
> Q     Well, sitting here today, who do you believe your client in the *Hesch* case was?
>
> A     At that completed matter, is – well, the company called Wyeth Pharmaceuticals, which you say is an unincorporated division of Wyeth, Inc., or whatever it is.
>
> Q     That was your clients [sic, client] in the *Hesch* case?
>
> A     You say, you tell, you teach me today that ***this was my client.***
>
> Q     All right.
>
> A     That's not my understanding at the time. (Tr. 149-150, emphasis added)

Representing an unincorporated division of Wyeth is no different from representing Wyeth itself, because a "division of a corporation is not a separate entity but is the corporation itself." *In re Sugar Indus. Antitrust Litigation*, 579 F.2d 13, 18 (3d Cir. 1978). *See Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 879 (N.D. Ill. 2006) ("An unincorporated division like PRI, however, has no separate legal existence apart from its parent corporation").

In addition to his work on the *Hesch* case, Feldges worked on the Lonza opposition proceeding, having billed 11.3 hours to the matter in 2008 (BSX 16, p. 2) and having been responsible for preparing Howrey's bills relating to the opposition. (Tr. 126). Feldges testified about Howrey's client in the Lonza opposition proceeding:

> Q      And is it your position that these papers were submitted to the European Patent Office on behalf of Wyeth, the parent, but Howrey didn't represent Wyeth, the parent?
>
> A      As I said before, my formal opponent, Wyeth was mentioned, but the client/attorney relationship was with Wyeth Pharmaceuticals, to the best of my belief.
>
> Q      And was that relationship with the Wyeth Pharmaceuticals [d]ivision of Wyeth?
>
> A      As you educated me today, that is an unincorporated division.  (Tr. 154)

Thus, in Feldges view, Howrey's client in the Lonza opposition, as in the *Hesch* case, was the unincorporated Wyeth Pharmaceuticals division, which is legally indistinguishable from Wyeth itself.  Tellingly, no Boston Scientific witness ever suggested which corporate entity could conceivably be Howrey's client in the opposition if the client were not Wyeth, the parent, or its unincorporated Wyeth Pharmaceuticals division.

Feldges admitted that the "next step" in the opposition proceeding will be to "schedule a hearing" and that the hearing "will, at some time, take place." (Tr. 155)  Therefore, Howrey's representation of the unincorporated Wyeth Pharmaceuticals division (i.e., Wyeth) in the Lonza opposition proceeding is not yet concluded, and Wyeth is a current Howrey client.

As to Howrey's engagement letters, Feldges testified that the first letter (BSX 1) was written to an individual at Wyeth Pharmaceuticals B.V.  (Tr. 156)  He admitted that Wyeth Pharmaceuticals B.V. was not a party to the Lonza opposition proceeding, and that Howrey did not take instructions from anyone at Wyeth Pharmaceuticals B.V. relating to the Lonza opposition.  (Tr. 157)  The second engagement letter (BSX 19) was dated July 11, 2008.  It comes too late to apply to Howrey's work on the Lonza opposition; the papers Howrey submitted to the European Patent Office were dated February 28, 2008.  (DX 5 at A55)

Feldges admitted that when he first discussed working on the Lonza opposition with Aaron Young and others, he did not send any sort of engagement letter. (Tr. 159) He went on to admit that no engagement letter governing the Lonza opposition existed:

> Q   Well, sitting here today, can you point us to anything that reflects an agreement about the terms of Howrey's representation of Wyeth as it relates to the Lonza opposition?
>
> A   I will not speculate about a legal principle, but I have not seen a letter sent to Wyeth Pharmaceuticals in the U.S., that type of letter, yes.
>
> Q   Have you seen any letter sent to anyone that, in your view, governs conflict waivers relating to the Lonza opposition work?
>
> A   With regard to this specific matter, I have not sent a letter, and I'm also not aware of anybody else having sent a letter. (Tr. 160-61)

David Manspeizer's testimony leads to the same conclusions as Feldges' testimony. Manspeizer explained that Howrey represented Wyeth, the parent, in the Lonza opposition proceeding. (Tr. 21) He noted that Joachim Feldges had been contacted by Aaron Young, an in-house lawyer at Wyeth, the parent, about handling the Lonza opposition, and that Young had told Feldges in an e-mail that "we are still trying to determine how the work would be divided between Howrey and Wyeth." (DX 11; Tr. 22-25) He observed that Howrey had filed papers in the European Patent Office, identifying the opponent in the opposition as Wyeth, the parent. (Tr. 18-19) He testified that Howrey had sent its bills for work on the Lonza opposition to Aaron Young and Elizabeth Hurley, both of whom were in-house lawyers for Wyeth, the parent. (DX 35; Tr. 30-31). The invoices themselves were addressed to "Wyeth Pharmaceuticals," which Manspeizer explained is "an unincorporated division of Wyeth, the parent company." (DX 35; Tr. 31) Howrey's bills relating to the Lonza opposition were paid by checks drawn on the Delaware bank account of Wyeth, the parent. (DX 17 & DX 18; Tr. 31-33)

Manspeizer explained that after working on the opposition proceeding for several months, Howrey had approached Wyeth, the parent, to request a conflict waiver when Lonza tried to engage Howrey to handle a patent infringement case. (DX 12; Tr. 25-30) Tom Szatkowski, an in-house lawyer at Wyeth, the parent, responded to this request by stating that "Wyeth is not able to provide the requested waiver." (DX 12; Tr. 29)

Manspeizer also testified that Wyeth, the parent, had never given "Howrey a conflict waiver that would permit Howrey to be adverse to Wyeth in this case." (Tr. 30)

Disqualification is the correct remedy for Howrey's violation of ABA Model Rule 1.7. If Howrey is not disqualified, Wyeth will be forced to hire new counsel to handle European intellectual property issues relating to Effexor, Rapamune, and Enbrel, as well as the other matters (such as the Lonza opposition) that Howrey is handling. (Tr. 37, 60) Having new counsel learn what Howrey lawyers already know will involve a cost to Wyeth. (Tr. 61) More importantly, while new counsel are developing the background which Howrey lawyers already have, Wyeth will not "be as prepared as we could have been and would have been to respond in various areas," particularly relating to such important products as Effexor, Rapamune, and Enbrel, Wyeth's largest selling product. (Tr. 37, 61) It may not be possible to find counsel as competent as Howrey in countries like Belgium and The Netherlands, where "[t]here are not a large number of firms" and "[m]ost of the other firms don't have the same kind of global presence that Howrey has." (Tr. 61)

There is no evidence that Howrey's disqualification will materially prejudice Boston Scientific. After all, its first choice to handle this litigation was Kenyon & Kenyon, which has represented Boston Scientific from the start of these cases and will continue to do so. (Tr. 172) No one from Boston Scientific itself gave testimony or even submitted a declaration to try to

establish prejudice. Significantly, the other Howrey partner who testified, Edward Han, admitted that Kenyon & Kenyon had handled other cases for Boston Scientific in addition to the present litigation. (Tr. 172) He said that he did not know who had handled more patent cases for Boston Scientific: Kenyon & Kenyon or Howrey. (Tr. 172)

Disqualifying Howrey will avert "[t]he spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client," which "demeans the integrity of the legal profession and undermines confidence in the attorney-client relationship." *Baas v. Dollar Tree Stores, Inc.*, 2008 WL 906496, *2 (N.D. Cal. April 1, 2008) (internal citations omitted). For this reason, "the courts have gone so far as to suggest that doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification." *International Business Machines Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978).

During the July 22 evidentiary hearing, this Court had a firsthand look at a client being subjected to a hostile cross-examination by a person whom he reasonably believed to be his own attorney. It was unseemly, it was uncomfortable, and it was contrary to the way that law is supposed to be practiced. Witnessing this display live, as opposed to just reading about conflicts rules in written court opinions, highlights why Howrey should not be permitted to stay in this case. Howrey's choosing of financial opportunity over its duty of loyalty to a client is just plain wrong, and to permit Howrey to proceed would reflect poorly on our profession and on the quality of the administration of justice in the federal courts.

## CONCLUSION

The Court should disqualify Howrey.

                    ASHBY & GEDDES

                    */s/ Steven J. Balick*

                    _____
                    Steven J. Balick (I.D. #2114)
                    John G. Day (I.D. #2403)
                    Lauren E. Maguire (I.D. #4261)
                    500 Delaware Avenue, 8th Floor
                    P.O. Box 1150
                    Wilmington, Delaware 19899
                    302-654-1888
                    sbalick@ashby-geddes.com
                    jday@ashby-geddes.com
                    lmaguire@ashby-geddes.com

                    *Counsel for Defendants*

*Of Counsel:*

David T. Pritikin
William H. Baumgartner, Jr.
Russell E. Cass
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, Illinois 60603
Telephone: 312-853-7000
dpritikin@sidley.com
wbaumgar@sidley.com
rcass@sidley.com

Dated: August 11, 2009