IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. No. 07-333-SLR Civ. No. 07-348-SLR |
| v. | ) ) | Civ. No. 07-409-SLR |
| JOHNSON & JOHNSON INC. and CORDIS CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. No. 07-765-SLR |
| v. | ) ) | |
| JOHNSON & JOHNSON INC., CORDIS CORPORATION and WYETH, | ) ) ) | |
| Defendants. | ) | |

Josy W. Ingersoll, Esquire, Karen L. Pascale, Esquire, Karen E. Keller, Esquire, and Andrew A. Lundgren, Esquire, of Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Richard L. Delucia, Esquire, Paul M. Richter, Esquire, Michael K. Levy, Esquire, and Jerry Canada, Esquire, of Kenyon & Kenyon LLP, New York, New York, and James F. Hibey, Esquire, Matthew M. Wolf, Esquire, and John E. Nilsson, Esquire, of Howrey LLP, Washington, D.C.

Steven J. Balick, Esquire, John G. Day, Esquire, and Lauren E. Maguire, Esquire, of Ashby & Geddes, Wilmington, Delaware. Counsel for Defendants. Of Counsel: David T. Pritikin, Esquire, William H. Baumgartner, Jr., Esquire, and Russell E. Cass, Esquire, of Sidley Austin LLP, Chicago, Illinois.

**MEMORANDUM OPINION**

Dated: August 25, 2009
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

Pending before the court is defendant Wyeth's ("Wyeth") motion to disqualify Howrey LLP ("Howrey") from representing plaintiffs Boston Scientific Corporation and Boston Scientific Scimed Inc. in the above-captioned cases.[1] (D.I. 184)[2] The court conducted an evidentiary hearing on July 22, 2009 (the "hearing").[3] For the reasons that follow, the court denies the motion to disqualify.

## II. BACKGROUND

Wyeth is a global pharmaceutical company with multiple divisions and subsidiaries. (D.I. 247 at 35; DX 27 (excerpt of Wyeth's 2008 SEC 10-K filing listing "significant" subsidiaries); DX 36 (Wyeth internal document showing Wyeth Pharmaceuticals as a division of Wyeth and "not an independent corporation)) Among these divisions and subsidiaries are many with similar names. (*See id.*) For example, while "Wyeth Pharmaceuticals" is the name of one of Wyeth's unincorporated internal divisions, the same words appear in the names of several Wyeth subsidiaries incorporated throughout the world, including: Wyeth Pharmaceuticals Inc. (United States); Wyeth Pharmaceuticals S.A./N.V. (Belgium); Wyeth Pharmaceuticals FZ-LLC

---

[1] Also pending is plaintiffs' motion to strike Wyeth's reply brief in support of its motion to disqualify or, in the alternative, for leave to file a surreply. (D.I. 212) Because Wyeth's motion to disqualify is denied, plaintiffs' motion to strike is denied as moot.

[2] In this opinion, citations to docket items reflect the numbering in Civ. No. 07-765-SLR.

[3] The record in this case includes exhibits admitted into evidence during the hearing. Because the exhibits have not been docketed with the court, the court cites to the hearing exhibit numbers ("DX__" or "PX__") with notes to the full citations.

(Dubai); Wyeth Pharmaceuticals France (France); Wyeth Pharmaceuticals Limited (Ireland); and Wyeth Pharmaceuticals B.V. (Netherlands). (*Id.*; D.I. 247 at 55-56)

Howrey has handled several matters for the Wyeth family of companies. (DX 31 (timekeeper sheet showing Howrey's hours billed to "Wyeth Pharmaceuticals" on various matters between 2003 and sometime in 2009)) In handling these matters, it has not always been clear which Wyeth entity Howrey has been representing. For example, in December 2008, Howrey wrote a series of letters to Wyeth Pharmaceuticals B.V.'s competitors regarding these competitors' intended release of products that might infringe on Wyeth's European patents and Wyeth Pharmaceuticals B.V.'s right to market products under those patents in the Netherlands. (D.I. 247 at 38-41; DX 8 (letters from Howrey attorney Carreen Shannon asserting Wyeth's and Wyeth Pharmaceuticals B.V.'s patent and marketing rights with respect to venlafaxine); PX 26 (declaration of Carreen Shannon regarding her drafting of letters to Wyeth Pharmaceuticals B.V.'s competitors)) While Howrey attorney Carreen Shannon, the drafter of the letters, declares that she understood her client to be "Wyeth Pharmaceuticals," the letters she drafted were "[o]n behalf of Wyeth, including Wyeth Pharmaceuticals B.V." (PX 26; DX 8)

Indeed, it appears that, at least from 2003 through sometime in 2009, Howrey seldom differentiated between Wyeth entities in its representation. Howrey's billing records for that period simply list 27 matters for client "Wyeth Pharmaceuticals," even though Howrey during that period, in addition to the above matter, also represented other discrete Wyeth subsidiaries, including Wyeth Pharmaceuticals S.A./N.V. and Wyeth Pharma GmbH. (DX 31; D.I. 247 at 55-56, 81) Howrey also has listed 10 billing

3

addresses for "Wyeth Pharmaceuticals," even though those 10 addresses represent at least four discrete entities, including Wyeth. (D.I. 192 at ex. 2) Factors contributing to this confusion, beyond the name similarities, include: Wyeth's in-house attorneys directly and indirectly (by supervising the work of Wyeth subsidiaries' attorneys) controlling Howrey's representation of Wyeth and/or Wyeth entities (*e.g.*, D.I. 247 at 19-25, 38-39, 43, 76); and Howrey's failure to prepare and distribute client representation memoranda in all but two representations (2006 representation of Wyeth Pharmaceuticals B.V. and a 2008 representation of Wyeth Pharmaceuticals S.A./N.V. (*see* PX 1 (2006 client representation memorandum from Howrey addressed to Wyeth Pharmaceuticals B.V.); PX 19 (2008 client representation memorandum from Howrey addressed to Wyeth Pharmaceuticals S.A./N.V.)).

It is with this course of dealing as backdrop that Howrey has undertaken to represent a Wyeth entity in its opposition in the European patent office to a European patent owned by Lonza Biologics, PLC (the "Lonza matter").[4] (D.I. 186 at 50, 139; D.I. 192 at ¶ 8)[5] The notice of opposition filed by Howrey in the Lonza matter on March 10, 2008, identifies "Wyeth" as the opponent and lists the opponent's address as "Five Giralda Farms, Madison, New Jersey 07940-0874, United States of America," which is the address for Wyeth's corporate offices. (D.I. 186 at 50; D.I. 247 at 19) Wyeth's in-house attorneys have supervised Howrey's work on the Lonza matter and have

---

[4]The patent at issue in the Lonza matter concerned "antibody purification by protein A and ion exchange chromatography." (D.I. 186 at 50)

[5]The patent owner responded to the opposition on October 22, 2008, and requested a hearing, which Wyeth expects will occur in 2009. (D.I. 186 at 139, ¶ 5)

4

corresponded with Howrey attorneys in Europe regarding the division of labor between the in-house attorneys and Howrey and Howrey's proposed budget for various case scenarios. (D.I. 247 at 19-25; DX 11 (two emails between, *inter alia*, Wyeth attorney Aaron Young and Howrey partner Dr. Joachim Feldges pertaining to the Lonza matter)) Howrey did not prepare or distribute a client representation memorandum in connection with the Lonza matter. (*See* PX 1; PX 19) Howrey, however, did seek permission from Wyeth in October 2008 to represent Lonza in an unrelated patent infringement suit, which permission Wyeth denied. (D.I. 186 at 112-13) The Lonza matter is still pending, and Howrey continues as counsel. (D.I. 186 at 139, ¶ 5)

On March 3, 2009, Howrey informed Wyeth that Howrey planned to represent plaintiffs in the instant suits related to stent products.[6] (D.I. 186 at 115-16) Wyeth objected. (*See, e.g., id.* at 122-25) Nevertheless, on April 2 and July 21, 2009, Howrey attorneys based in Washington, D.C., none of whom has worked on the Lonza matter (D.I. 247 at 96, 126), sought permission from the court to appear *pro hac vice* as counsel for plaintiffs. (D.I. 172; D.I. 243) Howrey has shielded its attorneys on the Lonza matter, who are all based in Europe (D.I. 247 at 96, 126), from the representation of plaintiffs in the instant suits. (*Id.* at 166-67)

III. DISCUSSION

Wyeth seeks to disqualify Howrey. Its argument for disqualification is, essentially, as follows: (a) attorney conduct before the court is governed by the court's local rules; (b) the court's local rules provide that attorneys must adhere to the

---

[6]Howrey has represented plaintiffs in many suits related to stent products. (D.I. 192 at ¶¶ 2-3)

5

American Bar Association's Model Rules of Professional Conduct (the "Model Rules"); (c) the Model Rules provide that an attorney shall not, without consent, represent a client if doing so places the attorney in a position directly adverse to another client; (d) Howrey's representation of plaintiffs in the above-captioned cases violates the Model Rules because it places Howrey, without Wyeth's consent, in a position directly adverse to Wyeth, which is currently Howrey's client in the Lonza matter; and (e) the appropriate remedy in these circumstances is disqualification. As will be more fully discussed hereafter, the court agrees with Wyeth with respect to (a) through (d), but not with respect to (e).

### A. Attorney Misconduct and Disqualification Generally

"Attorney conduct is governed by the ethical standards of the court before which the attorney appears." *Madukwe v. Del. State Univ.*, 552 F. Supp. 2d 452, 458 (D. Del. 2008) (citing *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984)). Pursuant to this court's Local Rule 83.6(d), attorneys admitted to practice before the court are governed by the Model Rules. *See* L.R. 83.6(d).

Whenever an attorney's conduct relative to the Model Rules is called into question, the court must "examine the charge." *See Webb v. E.I. Du Pont de Nemours & Co., Inc.*, 811 F. Supp. 158, 160 (D. Del. 1992). The court has the power to disqualify attorneys for violation of the Model Rules. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Nevertheless, motions to disqualify are generally disfavored. *E.g., Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D.Pa. 1994); *Integrated Health Servs. of Cliff Manor, Inc. v. THCI, Co. LLC*, 327 B.R. 200, 204 (D. Del. 2005). "[T]he court should disqualify an attorney only when it determines, on the facts of the particular

case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Miller*, 624 F.2d at 1201. "[D]isqualification is never automatic," *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001), and the court has "wide discretion in framing its sanctions to be just and fair to all parties involved." *Miller*, 624 F.2d at 1201.

### B. Whether Howrey's Representation of Plaintiffs Violates Model Rule 1.7

In relevant part, the Model Rules provide that, unless the client consents pursuant to Model Rule 1.7(b), "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Model Rule 1.7(a). A "concurrent conflict of interest" occurs where, *inter alia*, "the representation of one client will be directly adverse to another client." *Id.* There is no real dispute that Howrey's representation of plaintiffs places it in a position directly adverse to Wyeth. Whether Howrey's representation of plaintiffs violates Model Rule 1.7 turns, then, on whether Wyeth is currently Howrey's client.

Under Delaware law, where there is no express contract or formal retainer agreement evidencing an attorney-client relationship, "courts look at the contacts between the potential client and its potential lawyers to determine whether it would have been **reasonable for the 'client' to believe** that the attorney was acting on its behalf as counsel." *Benchmark Capital Partners IV, L.P. v. Vague*, 2002 WL 31057462, *3 (Del. Ch. Sep. 3, 2002) (emphasis added); *PharmAthen, Inc. v. SIGA Technologies, Inc.*, 2009 WL 2031793, *1 (Del. Ch. July 10, 2009); *cf. Jones v. United States*, 828 A.2d 169, 176 (D.C. 2003) (attorney-client relationship "hinges on the client's . . . belief that he is consulting an attorney").

7

The record here does not contain any express agreements evidencing any current attorney-client relationship between Howrey and Wyeth. The record, however, does support the conclusion that it is reasonable for Wyeth to believe that Howrey has been acting on its behalf with respect to the currently-active Lonza matter. First, Howrey identified Wyeth as the opponent in the Lonza matter, making it reasonable for Wyeth to assume that Howrey's filing of the notice of opposition was done on its behalf. Second, Howrey corresponded directly with Wyeth's in-house attorneys in managing the Lonza matter, and the posture of the correspondence suggests that Wyeth was dictating the terms of the relationship, thus making it reasonable for Wyeth to assume that Howrey represented its interests. Finally, Howrey went to Wyeth to seek permission to represent Lonza Biologics, PLC, in an unrelated matter; because Howrey would have needed Wyeth's permission only if Wyeth were Howrey's client in the Lonza matter, it is reasonable for Wyeth to believe, from Howrey's overture, that it is in fact the client in the Lonza matter. For at least these reasons, then, Wyeth's belief as to its status as a client of Howrey is reasonable, and since the Lonza matter is still active, there is a current attorney-client relationship between Howrey and Wyeth. Accordingly, Howrey's representation of plaintiffs in the instant suits violates Model Rule 1.7.

### C. Whether Disqualification is Appropriate

Howrey's violation of Model Rule 1.7 notwithstanding, the court concludes that disqualification is not the appropriate remedy under the circumstances. In *Elonex*, the court opined that, even given a violation of Model Rule 1.7(a), disqualification would not be warranted where, *inter alia*, the law firm's concurrent representations were in unrelated matters; were "being done out of different offices in different cities;" and were

being done with an ethical wall in place between the two matters. 142 F. Supp. 2d at 583-84. The presence of those conditions here – the instant suits are unrelated to the Lonza matter; Howrey's Washington, D.C.-based attorneys are handling the instant suits, while its Europe-based attorneys continue to handle the Lonza matter; there is an ethical wall between the two matters – leads to the same conclusion.[7]

Moreover, Howrey's failure to comply with Model Rule 1.7 is, to a significant degree, due to Wyeth's conduct. Among other things, Wyeth's naming conventions, its use of the same in-house attorneys on matters involving different subsidiaries without consistently identifying to Howrey which entity those in-house attorneys were representing, and the willingness of it and its subsidiaries to receive billing invoices for matters on which they were not directly engaged with Howrey, together created significant confusion for Howrey as to which entity or entities it was representing, confusion which is evident from Howrey's time sheets, its mailing of billing invoices, and the averments of its attorneys in Europe. Wyeth should not now benefit from such obfuscatory conduct. Accordingly, the court declines to disqualify Howrey from the

---

[7]The court is aware of case law from other jurisdictions suggesting that a violation of Model Rule 1.7 should result in disqualification. See *Concat LP v. Unilever, PLC*, 250 F. Supp. 2d 796 (N.D. Cal. 2004) (court applying its own and California precedent to hold that disqualification, not ethical wall, was the appropriate remedy for violation of duty of loyalty that flowed from simultaneous representation of adverse clients); *In re Cendant Corp. Securities Litig.*, 124 F. Supp. 2d 235, 248-50 (D. N.J. 2000) (court applying New Jersey rule and its own precedent to hold similarly). The court finds those cases unpersuasive, especially to the extent that they suggest, contrary to Third Circuit precedent, that a violation of the duty of loyalty all but mandates disqualification. In the Third Circuit, and under this court's precedent, whether disqualification is appropriate depends on the facts of the case and is never automatic. See *Miller*, 624 F.2d at 1201; *Elonex*, 142 F. Supp. 2d at 582-83.

instant suits and instead orders Howrey to maintain its ethical wall.

## IV. CONCLUSION

For the aforementioned reasons, Wyeth's motion to disqualify (D.I. 184) is denied. Plaintiffs' motion (D.I. 212) is denied as moot. An appropriate order shall issue.